RUDY GARNIER )
)
v. ) NOS. 2:09-CV-28; 2:02-CR-72
) *Jordan/Inman*
UNITED STATES OF AMERICA )

## **MEMORANDUM OPINION**

Acting *pro se*, federal inmate Rudy Garnier brings this motion to vacate, set

aside, or correct a sentence under 28 U.S.C. § 2255, [Doc. 373 in Criminal Action No.

2:02-cr-72].¹ The United States has responded in opposition to the motion, [Doc. 392],

characterizing it as timely but arguing that petitioner is entitled to no relief.² Those

arguments are well-taken and, for the reasons which follow, the motion will be

**DENIED** and the case **DISMISSED**.

### **I. *Procedural History***

In April of 2005, petitioner was convicted, pursuant to a jury verdict, of one

count of conspiracy to distribute and possession with the intent to distribute 50 grams

---

¹ All subsequent citations to the record refer to the criminal case file.

² When the Court ordered the United States to respond, a possible timeliness
issue was not mentioned and, in its response, the government concedes that petitioner's
§ 2255 motion is timely. Since the response does not show patently that the concession
is based on an erroneous calculation—indeed, the response contains no calculation
whatsoever— and since nothing suggests that the concession was not intentional or
deliberate, the Court finds that respondent has waived any statute-of-limitations
defense it may have had. *See Day v. McDonough*, 547 U.S. 198, 202 (2006).

or more of cocaine base (crack), in violation of 21 U.S.C. § 846 and § 841(b)(1)(a). He was also convicted of four counts of aiding and abetting laundering of monetary instruments, a violation of 18 U.S.C. § 1956(a)(1)(A)(i). Upon the government's motion, the Court dismissed a conspiracy charge involving 5 or more grams of crack cocaine (Count 2) and sentenced him to a 235-month term of imprisonment.

Garnier appealed, but relief was denied, [Doc. 343, *United States v. Garnier*, No. 05-6332 (6th Cir. July 26, 2007) (unpublished order)]. Petitioner then filed two *pro se* motions to reduce his sentence under 18 U.S.C. § 3582, based on the retroactive amended guidelines for crack cocaine offenses, [Docs. 348 and 350]. After counsel was appointed, the Court granted the motions and lowered his sentence on Count one to 188 months, with the money-laundering counts—three, four, five, six, and ten—to be served concurrently, as before, [Doc. 397].

This instant motion to vacate followed thereafter. In his motion, petitioner asserts three grounds for relief—that his convictions on the money laundering counts are invalid, that the invalidity of those convictions tainted his cocaine-conspiracy conviction, and that, in several instances, he received ineffective assistance of counsel.

## II. *Standards of Review*

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding

2

invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). However, a prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court finds that an evidentiary hearing is unnecessary and that it can decide this motion on the record.

## III. *Factual Background*

The evidence at trial showed that petitioner had an agreement to distribute crack cocaine in Tennessee and that he engaged in a conspiracy with the goal of increasing the profit from drug trafficking. To this end, petitioner actively participated in the conspiracy by transporting crack cocaine to this state, where he weighed it, bagged it, and provided it to others to distribute. Several witnesses testified that they had wired money to Petitioner , which had been obtained through crack sales, that he should have

3

known the origin of the proceeds since the witnesses who so testified had no other means of support, and that the money was used to purchase airline tickets and to pay for crack cocaine.

## IV. *Discussion*

### A. Invalid Money-Laundering Convictions

In his initial claim, petitioner maintains that the money-laundering statute, 18 U.S.C. § 1956(a)(1)(A)(i), is unconstitutionally vague because it fails to define "proceeds," though the Supreme Court later defined the term as meaning "profits."

18 U.S.C. §1956(a)(1)(A)(i) "prohibits promotional money laundering, i.e., the reinvestment of proceeds of unlawful activity into the illegal scheme from which the proceeds were derived," *United States v. Kelso*, 2012 WL 934024, \*4 (6th Cir. 2012) (citation and internal quotation marks omitted),"[t]he paradigmatic example of [which] is a drug dealer using the proceeds of a drug transaction to purchase additional drugs and consummate future sales ." *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010). The elements of this offense are that a defendant conducted a financial transaction that involved the proceeds of unlawful activity, knowing that the property involved was proceeds of unlawful activity, and intending to promote that unlawful activity. *Kelso*, 2012 WL 934024, at \*4. It is petitioner's position that the first element was missing.

4

As authority for his claim, he cites to *United States v. Santos*, 553 U.S. 507 (2008), as a case in which the Supreme Court, interpreting the meaning of a term in § 1956, held that the word "proceeds" was ambiguous as used in the statute and that, as a result, in certain circumstances, it must be read to mean "profits" from the illegal activity, and not gross receipts. Petitioner asserts that, because the prosecution failed to prove that the money laundered was "profits" derived from his cocaine-dealing conspiracy, those convictions are constitutionally infirm and must be vacated.

Petitioner suggests that *Santos* applies to him because it is retroactive and, alternatively, because it is a substantive holding which falls outside the retroactivity rule in *Teague v. Lane*, 489 U.S. 288 (1989). *Teague* holds that, generally, new constitutional rules of criminal procedure do not apply to cases which have become final before the new rules are announced. *Id.* at 310. Petitioner is correct on both counts, as the Sixth Circuit has recently decided. *Wooten v. Cauley*, __ F.3d __, __, 2012 WL 1216288, *5 (6th Cir. Apr. 12, 2012) ("Because the new definition of a key phrase in the money laundering statute is a substantive change of law and increases the government's burden of proof, we . . . hold[] that *Santos* is retroactive.").

However, *Santos'* holding has no effect in the case at bar. In *United States v. Smith*, 601 F.3d 530 (6th Cir. 2010), the Court stated:

> Title 18 U.S.C. § 1956(a)(1)(A)(i) provides criminal penalties for anyone who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or

5

attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity . . . ." The statute also criminalizes conspiracy to violate that provision. 18 U.S.C. § 1956(h). In *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), the Supreme Court held that a money-laundering conviction of a man involved in an illegal gambling operation was improper because, at least in the context of that case, "proceeds" under the statute meant "profits" as opposed to "receipts,"and the Government had not proven that the defendant's action had involved profits. *See id.* at 2031. This court has interpreted *Santos* to hold that

"[P]roceeds" does not always mean profits, as [the *Santos* plurality] concluded; it means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase.

[*United States v.*] *Kratt*, 579 F.3d [558,] 562 [(6th Cir. 2009)], (first alteration in original). As Justice Stevens made clear in his concurring opinion in *Santos*, the predicate offense of conspiracy to distribute cocaine does not fall within the category of offenses for which "proceeds" means "profits." *See Santos*, 128 S.Ct. at 2032 n. 3 (Stevens, J., concurring).

*Id.* at 544.

The Sixth Circuit then observed that a majority of the Supreme Court—concurring Justice Stevens and the four dissenting Justices—had "explicitly preserved the possibility that 'proceeds' does not necessarily mean 'profits' when a member of a drug conspiracy is prosecuted under a drug-trafficking enterprise. " *Ibid.*

6

Thus, this circuit has interpreted *Santos* in a way which does not help petitioner, i.e., that it does not apply to a § 1956 offense, where the property involved in the financial transaction affecting interstate commerce represents the proceeds from a drug-trafficking enterprise.[3] *United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010) ("*Santos* does not apply in the drug context.") (listing cases). In such a case, "proceeds" means gross revenues and is not limited to "profits." *Ibid.*; *see also United States v. Haque*, 315 F. App'x 510, 525 (6th Cir. 2009) (not plain error to fail to charge jury that "proceeds" means "profits" outside of the context of illegal gambling case).

Because the prosecution did not need to prove that the laundered money consisted of profits, not just gross receipts, petitioner's first claim warrants no relief.

B. Money Laundering Convictions Taint the Conspiracy Conviction

After slogging through the contentions underlying this claim, the Court understands it to be premised on petitioner's belief that, absent a conviction on the crack conspiracy charge, he could not have been convicted of money laundering. This is so, according to petitioner, because the prosecution's theory was that he laundered the proceeds obtained through the drug conspiracy alleged in Count one and because

---

[3] In 2009, Congress amended 18 U.S.C. § 1956 to define "proceeds" as "gross receipts' in all contexts. *Wooten*, 2012 WL 1216288, at *5 n.1 (citing to 18 U.S.C. § 1956(c)(9)). But the amendment is not retroactive and makes no difference in petitioner's case.

7

(by implication) absent a cocaine conspiracy, there would be no proceeds to launder. Arguing that his money laundering convictions are invalid under *Santos* and that those convictions are "inextricably intertwined" with the cocaine conspiracy conviction, petitioner posits that the cocaine conviction is also invalid must be vacated. The Court disagrees with petitioner's reasoning, as well as his conclusion.     As the Court has found, the *Santos*'s decision interpreting "proceeds" as "profits" had no effect on petitioner's money-laundering convictions, given that the specified unlawful activity in which petitioner engaged and which generated the proceeds was cocaine-trafficking and given that "proceeds' in a drug-dealing case includes gross receipts. *See Smith* , 601 F.3d at 544. Since *Santos*'s "proceeds means profits" ruling does not apply to money-laundering activity where the proceeds stem from a drug-dealing enterprise, *Santos*'s effect on petitioner's money laundering convictions was nil.

Contrary to petitioner's assertion, his money-laundering convictions are not invalid under *Santos* and, thus, did not spill over to taint his crack-cocaine conspiracy conviction. Nor were petitioner's convictions for money laundering "inextricably intertwined" with his cocaine conviction because petitioner could have been acquitted on the cocaine charge and still have been found guilty on the money laundering charges and vice versa. *See United States v. Sims*, 144 F.3d 1082, 1083 (7th Cir.1998) (rejecting argument that an acquittal on a drug conspiracy count necessarily negated

8

all of the elements required to sustain a conviction on the money laundering counts). This claim lacks merit.

As a final note, the Court has not deemed petitioner's claim to be a challenge to the sufficiency of the evidence to sustain his convictions because that issue was raised and decided on appeal, [Doc. 343], and because it could not be revisited here absent exceptional circumstances, which do not appear to exist in this case. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

## C. Ineffective Assistance of Counsel.

A defendant has a Sixth Amendment right to counsel, including effective assistance from that counsel, during the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376,1385 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."). The United States Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, the petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.* at 687; *Gravely v. Mills*, 87 F.3d 779, 785

9

(6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland* at 689. A Court's scrutiny of counsel's performance is to be highly deferential and effective assistance is presumed. *Id.* at 687-88. In addition to deficient performance, a petitioner must also show actual prejudice. A petitioner will satisfy the prejudice prong of the *Strickland* test if she shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.[4]

Bearing these principles in mind, the Court turns now to petitioner's three alleged attorney errors.

1. *Advised Against a Guilty Plea, Resulting in Forfeiture of More Lenient Sentence*

In this claim, petitioner makes the allegations which follow. After petitioner indicated his interest in negotiating guilty pleas to resolve the pending criminal charges against him, his appointed attorney, Mr. Wayne Stambaugh, presented him with a proposed plea agreement, dated March 3, 2005. The agreement offered, in exchange for petitioner's guilty pleas to Counts two and ten, to drop all other counts against him

---

[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694 .

at sentencing. Even so, petitioner was displeased with the proposed plea agreement, which he saw as vague and tantamount to an open plea, with too many sentencing issues remaining unaddressed. For example, the agreement advised that petitioner faced a five- to forty-year sentence with no cap; that the Court had authority to impose any lawful sentence; that the Sentencing Guidelines would be considered to determine the appropriate sentence, which would also be based on the entire scope of his criminal history; and that other factors set forth in the Guidelines and in 18 U.S.C. § 3553 would likewise play a role in the sentencing determination.

After petitioner reviewed the offered plea agreement, he asked Mr. Stambaugh to renegotiate the same plea deal, but with a cap of five years on the statutory minimum sentence or to broker an agreement with a five- to ten- year cap on his sentence exposure. Counsel responded that there was no way he could guarantee that the Court would agree to be bound within any range of sentencing, given the wide latitude provided to federal judges by 18 U.S.C. § 3553(a). Petitioner countered that Mr. Stambaugh could request and insist on a plea agreement under Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, where the judge would actually be bound by a sentence recommended by the government. Counsel "snapped" and "threatened" to have petitioner represent himself since he "kn[ew] that much about the law." On this note, the conversation ended.

11

A few weeks later, counsel returned and advised petitioner that he would be better off going to trial because there was no way the government could prove conspiracy, which was the reason it had chosen to offer a plea for Counts two and ten—counts that it could not prove either. Mr. Stambaugh further stated that the government had no power to suggest any specific sentence to the Court. Petitioner believed that counsel might be right in his legal interpretation of Rule 11(c)(1)(C), and, upon counsel's urging, though not necessarily agreeing with it, petitioner proceeded to trial.

As it turned out, counsel was incorrect because, in fact, there is a provision in the law which binds a court to a specific plea. If a court rejects a plea agreement containing provisions of the type specified in Rule11(c)(1)(A) or (C), it may either accept the plea agreement and stand bound by its terms or reject the plea agreement and allow the defendant an opportunity to plead anew.

Petitioner argues that, due to Mr. Stambaugh's incorrect advice, he was deprived of the opportunity of allowing the Court to decide whether to accept or reject the Rule 11(c)(1) plea agreement in this case. Prejudice ensued from the incorrect advice, so petitioner maintains, because he lost the opportunity to receive a lower sentence—a three-level reduction for acceptance of responsibility and a two-level reduction under

12

the safety valve provision, for which petitioner was eligible according to the probation officer.

The United States argues, in its response, that petitioner has not established that his attorney gave him ineffective assistance. First of all, the United States points out that petitioner has not alleged that counsel unreasonably advised him to reject a plea offer, but instead that petitioner acknowledges that it was he who disdained the proposed plea agreement because he disliked the sentencing provisions and thought that a better deal could be obtained from the government. Secondly, the United States insists that it would not have offered petitioner a plea agreement containing a cap of five or ten years on his sentencing exposure, notwithstanding petitioner's impression that counsel could somehow have finagled from the government a Rule 11(c)(1)(C) plea agreement.

There are two parties involved in the negotiation of plea agreements—the defendant and the government. Mr. Stambaugh could not have unilaterally crafted a plea agreement containing a sentencing cap because the other party essential to any such an agreement, i.e., the United States, is adamant that it would not have consented to a provision containing a sentencing exposure of five to ten years, even though that provision appeared to be the *sine qua non* of a plea agreement that petitioner would deem to be acceptable.

13

Seemingly, petitioner has overestimated his attorney's ability to extract from the government a plea agreement which it did not intend to offer. "[A] defendant has no right to be offered a plea," *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)), and "[g]enerally, decisions whether to initiate plea bargaining with prosecutors are precisely the kind of strategic decisions which are best left to the sound discretion and professional judgment of defense counsel, and are beyond the Court's purview." *Talley v. United States*, 2006 WL 3422997, *13 (E.D.Tenn. Nov. 27, 2006).

Moreover, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler*, 132 S. Ct. at 1391. As the United States indicates in its response, the only alternative left to petitioner after he spurned the government's plea offer was to put the prosecution to its proof on the criminal charges brought against him. Thus, trial was the only option left and, counsel's recommendation that petitioner go to trial after petitioner rejected the United States' "no cap" plea agreement does not constitute ineffective assistance. Suffice it to say, Mr. Stambaugh is not required to accomplish the impossible to meet his constitutional obligations—he need only provide reasonably effective assistance. *Strickland*, 466 U.S. at 687. The Court concludes that, in this instance, counsel did so. Petitioner's claim to the contrary has no merit.

## 2. *Elicited Damaging Testimony on Cross-Examination*

In this claim, petitioner contends that, at trial, the prosecution presented the testimony of four of petitioner's co-conspirators, namely Vernon McCallum, Tameeka White, Malik Farrad, and LaTonya Simpson—all of whom had pled guilty, drawing from them information concerning their pleas and any sentencing reduction they expected to receive as a result of their cooperation. However, when Mr. Stambaugh engaged those witnesses in cross-examination, it became clear to the jury that petitioner had been involved in some sort of illegal activity. No objection was lodged because the only individual who could have made an objection was Mr. Stambaugh—the one who was eliciting the unfavorable testimony, so stated the Sixth Circuit in its opinion on direct review. Petitioner asserts that, "[i]t cannot be said that without the admission of the pleas and conviction (sic) of the four witnesses at trial,. . . the jury would have convicted petitioner."

There are several flaws in this claim. Petitioner has not described the contents of each of the witness's testimony which illustrate the alleged cross-examination errors nor has he specified how those purported shortcomings damaged him, except in the most general terms, to wit, that the attorney failings left an impression with the jury that petitioner had engaged in criminal conduct. A petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255.

15

This petitioner makes no attempt to support his allegations with any developed argument, though it is he who is responsible for constructing his own arguments. The Court declines to perform that task for him by searching the record to find support for the asserted claim. Thus, the claim is conclusory and bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).

Secondly, petitioner he has not explained exactly how Mr. Stambaugh's cross-examination amounted to constitutionally inadequate performance, though he has made a lukewarm assertion of prejudice (i.e., "it cannot be said that, [absent the cross-examinations], the jury would have convicted petitioner"). *See Strickland*, 466 U.S. at 698 (A petitioner must show both deficient performance and resulting prejudice to succeed on claims of ineffective assistance of counsel.).

Even so, as the United States argues in its response, by cross-examining the cooperating witnesses regarding their involvement with petitioner in the drug-dealing, their guilty pleas, and the lengthy prison sentences confronting them, counsel was attempting to discredit their testimony by establishing that they had a motive to slant their testimony against petitioner in order to receive a lesser sentence.

Mr. Stambaugh chose one of the few options available to him on cross examination: To pursue a strategy calculated to undermine the testimony of witnesses

16

who admitted to engaging in drug-trafficking and illegal wire transfers with petitioner. Through counsel's deliberate inquiries concerning those stated drug- and wire-transactions, he sought to imply that the witnesses' memories and recollections were flawed and that the witnesses were not credible because most had prior criminal convictions and because all had pled guilty to the cocaine conspiracy charges for which petitioner was being tried and would say or do anything to ingratiate themselves with the government (including testifying falsely or unfavorably against petitioner) and, thereby, lessen the sentence they were facing for their own criminal conduct. Indeed, counsel elicited from one witness that, as a result of the deal he made with the government, his sentence was reduced from 31 years and 8 months to 21 years and 8 months, (Doc. 324, T. Tr., Test. of Malik Farrad at 219).

There was a risk, of course, in attacking the witness's credibility: By posing those questions, counsel might emphasize to the jury the criminal activity charged against his client. Assuming without finding that this happened, it makes Mr. Stambaugh's plan of attack on the witnesses' believability no less strategic and no less reasonable than it was when it was formulated by counsel. *See United States v. Figueroa*, 15 F.3d 706, 711 (7th Cir. 1994) ("Thus, in hindsight, [counsel's] strategy completely backfired. But a retrospective vista is precisely the wrong perspective from which to determine whether a criminal defendant received effective assistance. ").

17

Given the presumption that counsel's challenged conduct must be considered sound trial strategy, as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, attack, *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994), the Court finds that Mr. Stambaugh's cross-examination of these witnesses fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Doing nothing to counter these damaging claims and implications on cross-examination would not have been a wise choice, despite what [petitioner] argues now." *Jones v. Harry*, 405 F. App'x 23, *27, 2010 WL 5135612, *4 (6th Cir. Dec. 16, 2010).

And, even if this alleged attorney error amounted to deficient performance, petitioner suffered no prejudice because the incriminating evidence from these witnesses was before the jury already, having been elicited from them by the prosecution during direct examination. Attorney Stambaugh's cross-examination, even if it underscored evidence of his client's criminal actions, resulted in no prejudice, where the proof elicited had been presented previously to the jury.

### 3. *Refused to Permit Petitioner to Testify*

In the last illustration of ineffective assistance, petitioner contends that Mr. Stambaugh declined to let him take the witness stand in his own defense. Had counsel permitted petitioner to give his well-tailored testimony, petitioner believes that he could

Case 2:02-cr-00072-RLJ Document 420 Filed 04/17/12 Page 18 of 23 PageID #: 564

have explained to the jury that he was not a member of the conspiracy with which he was charged and that, if the jury were willing to believe him and to disbelief that he was involved in any of the charged substantive offenses, it might have entertained a doubt that he was guilty of the drug conspiracy. Counsel's adamant refusal to permit his client to take the stand, tell his story, and bond with the jury, denied him his constitutionally secured right to testify on his own behalf.

The United States maintains that petitioner did not inform the Court that Mr. Stambaugh was refusing to permit him to testify, at a time when the alleged constitutional violation could have been rectified. This failure, so respondent suggests, triggered the presumption that petitioner assented to his lawyer's statement that the defense would present no witnesses, which would include petitioner himself. Respondent further suggests that petitioner has failed to overcome the presumption and, for this reason, cannot obtain relief on this claimed instance of ineffective assistance of counsel.

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf." *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997) (citing *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)). It is up to a defendant as to whether to exercise his personal right to testify; however, when a defense attorney makes a strategic decision not to have the criminal accused testify, defendant's assent is presumed.

*United States v. Webber,* 208 F.3d 545, 551 (6th Cir. 2000); *see also Hodge v. Haeberlin,* 579 F.3d 627, 639 (6th Cir. 2000) ("A defendant is presumed to have waived his right to testify unless the record contains evidence indicating otherwise.") (citing *Webber*).

A criminal accused is free to repudiate his attorney's advice; assert his right to testify by informing the trial court that he wishes to so do; or fire his attorney—but, at a minimum, he must bring to the trial court's attention that he and counsel fundamentally disagree as to whether he should testify. *Webber,* 208 F.3d at 551. When a defendant does none of these things and does not testify, waiver of his right to testify is inferred. *Id.* As the Sixth Circuit reasoned, "[a] contrary rule would require courts to hold an evidentiary hearing any time a defendant who did not testify at trial filed an after-the-fact statement saying that he wanted to testify but was prevented from doing so." *Hodge,* 579 F.3d at 639.

In an affidavit executed approximately four years after his conviction, petitioner asserts that he "wanted to testify" but Mr. Stambaugh "refused to get [him] on the witness stand," [Doc. 373, Affidavit of Rudy Garnier at 11-12]. First of all, the Court notes the absence of any express statement by petitioner that he made it clear to his lawyer that he wanted to exercise his right to testify on his own behalf. Petitioner's conclusory assertion that he "wanted to testify," made many years later, together with

Case 2:02-cr-00072-RLJ Document 420 Filed 04/17/12 Page 20 of 23 PageID #: 566

his silence on the record when counsel stated that "the defense is presenting no proof," [Doc. 325, T. Tr. at 96], is insufficient to overcome the presumption of waiver. *Talley*, 2006 WL 3422997, at *17 (finding that a petitioner's statement that counsel "refused" to permit him to testify not enough to establish a violation of his constitutional right to testify). Given the presumption of waiver; the presumption that counsel has rendered professionally competent assistance; and the previously noted difficulty of challenging counsel's tactical decisions, the Court finds no deficiency of performance in connection with this claimed attorney error.

Nor does the Court find prejudice since the testimony petition asserts that he would have given consisted of an explanation to the jury that he was not a member of the drug-trafficking conspiracy. The Sixth Circuit has held that, where other witnesses corroborate the government's version of events and where the defendant claims that he would have testified that the other witnesses were not telling the truth, no actual prejudice has been shown. *Gonzales v. Elo*, 233 F.3d 348, 357-58 (6th Cir. 2000). This is exactly the claim made here. Witnesses presented testimony at trial which showed that petitioner was engaged in the cocaine conspiracy and in money laundering. All petitioner would have testified to was that he did nothing of the sort. Thus, no prejudice accrued due to counsel's alleged error in denying his client the right to testify.

21

## V. *Conclusion*

Because the grounds presented for relief in this § 2255 motion to vacate lack merit, the motion will be **DENIED**.

## VI. *Certificate Of Appealability*

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Those whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner

22

has failed to make a substantial showing of the denial of a constitutional right, a COA
will not issue.

A separate order will follow.

**ENTER**:

LEON JORDAN
UNITED STATES DISTRICT JUDGE